```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
CHRISTOPHER BENT                   :
                                   :
          Petitioner,              :   03 Civ. 9816 (LAK)(HBP)
                                   :
     -against-                     :   REPORT AND
                                   :   RECOMMENDATION
MICHAEL MCGINNIS, Superintendent   :
                                   :
          Respondent.              :
                                   :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

TO THE HONORABLE LEWIS A. KAPLAN, United States District Judge,

I. Introduction

Petitioner Christopher Bent seeks, by his pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an Order vacating the sentence and judgment of conviction imposed on March 4, 1999, after a jury trial, by the Supreme Court of the State of New York, Bronx County (Torres, J.), for one count of burglary in the second degree, in violation of New York Penal Law § 140.25. By that judgment, petitioner was sentenced as a persistent violent felony offender to an indeterminate term of imprisonment of sixteen (16) years to life. Petitioner is currently imprisoned pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II. Facts[1]

A. Facts Underlying
   Petitioner's Conviction

Petitioner's conviction arises from a December 24, 1997 burglary, during which petitioner forcibly entered Mary Phoenix's Bronx apartment while she was out and stole property and cash (Respondent's Memorandum of Law, annexed to Pollock Aff., ("Resp. Mem.") at 2).

At trial the prosecution offered the testimony of Baron White, the manager of Ms. Phoenix's apartment building, who testified that, on December 24, 1997, he saw petitioner in the building wearing a beige suit and carrying a filled red canvas bag. White stated that several minutes later he discovered that someone had broken into Ms. Phoenix's apartment, and he called

---

[1] No trial transcript has been provided. Accordingly, the facts set forth herein are based on the statements of facts and descriptions of trial proceedings set forth in petitioner's and the prosecution's briefs to the Appellate Division of the Supreme Court, which are annexed as Exhibits 1 and 2, respectively, to the affidavit of Assistant District Attorney Brian J. Pollock, sworn to July 7, 2004 ("Pollock Aff."), Docket Item 7. Where the briefs are in conflict, I have relied on the version of events set forth in petitioner's brief. Since the version of the events in petitioner's brief is, presumably, the view of the evidence and the proceedings most favorable to petitioner, petitioner is not prejudiced by my reliance on the briefs.

2

the police. Police Officer Aura Chacon arrived, and she and White canvassed the area for the suspect with no success. Chacon testified that she did not record White's description of the suspect (Defendant's Appellate Brief ("Dft. App. Br."), annexed as Exhibit 1 to Pollock Aff., at 4).

Three days later White saw petitioner in the apartment building again, and believing him to be the individual he had seen on December 24, White walked him to the street hoping to flag down a police car. After a few minutes, White "let [petitioner] get away" and called the police (Dft. App. Br. at 6). Police Officer Christopher Gahn responded to White's 911 call, and together they canvassed the area. Approximately two blocks away from the apartment building, White identified petitioner to Gahn, and Gahn arrested petitioner. According to Gahn, petitioner was wearing a tan suit and carrying an empty red nylon bag at the time of the arrest. White saw this bag at the police station and identified it at trial as the same one he saw petitioner carrying on December 24 (Dft. App. Br. at 6-7).

No evidence was offered at trial concerning the substance of White's December 24 call to police. The parties stipulated that the tape of the December 27 911 call and the Sprint report of that call were destroyed.

Petitioner's defense focused on the prosecution's lack of physical evidence, inconsistencies in White's descriptions of

3

the red bag, the unreliability of White's identification of petitioner and the fact that the 911 tape, which petitioner characterized as a "'critical'" piece of evidence, had been destroyed (Dft. App. Br. at 7-8).

   B.  The Jury Charge
       and the Verdict

The Trial Court's reasonable doubt charge described a doubt as a "'feeling of uncertainty,' 'not being sure,' 'of concern about something that has to be proven,'" before giving the jury the following instruction:

> [B]eyond a reasonable doubt means a certain degree of certainty, a certain degree of certainty that be [sic] in your mind as to the facts that have to be proven. Beyond a reasonable doubt does not mean scientifically proving something because we don't use scientific instruments to prove or it does not mean mathematical certainty.  It means reasonable certainty as to something.  And that the conclusion of reasonable certainty is arrived at through your human efforts in the analysis of the evidence.  A reasonable doubt starts out a doubt to begin with is a doubt and you know what a doubt is.  It's a feeling of uncertainty.  A feeling of not being sure about something.  A feeling that is of concern about something that has to be proven.  That is a doubt to begin with, but a reasonable doubt is more than just a feeling of uncertainty.  It's a feeling of uncertainty of something that has to be proven, something that must be proven because if for example there is a doubt in your mind as to the what [sic] the weather condition was on the day when this incident was to have taken place you maybe [sic] reasonable in concluding some doubt as to the weather, but the weather doesn't have to be proven. So a reasonable doubt as to the weather is not a doubt that is applicable to this case.  It has to be a reasonable doubt of something that must be proven and I'm going to tell you

4

> in a minute what it is that must be proven beyond a
> reasonable doubt.
>
> Also, it must be a conclusion that you arrive at based
> on your analysis of the evidence or the absence of
> evidence. Your conclusion as to whether you have a
> reasonable doubt of something that has to be proven
> must be arrived at based on your analysis of the evi-
> dence or the absence of the evidence. A reasonable
> doubt is not a feeling of sympathy. For example,
> should you have sympathy for one of the witnesses or
> sympathy for the defendant, sympathy is not a reason-
> able doubt. A reasonable doubt is not concerned about
> the conditions of your verdict because that has nothing
> to do with your judgment and conclusion as to what the
> evidence proves. Reasonable doubt is not the sense
> that this is a difficult problem that has to be de-
> cided. That this is a difficult job and you don't like
> to do it. We have a job to do. And having difficulty
> arriving at a conclusion is not a reasonable doubt. So
> a reasonable doubt is your assessment of the evidence
> as to what has to be proven, what has to be proven
> beyond a reasonable doubt. And your having that sense
> of concern, that sense of not being sure, that sense of
> discomfort with respect to what has to be proven, but
> based on your assessment of the evidence that has been
> received during the course of the trial. And the evi-
> dence of course has been primarily the testimony [of]
> the witnesses who testified. So a double [sic] to be a
> reasonable doubt should be one which a reasonable
> person and everyone of you has been selected based on
> the assessment that each one of you is a reasonable
> person, acting in a matter of this importance, because
> this is an important determination to be made in this
> proceedings [sic]. It's a doubt that you would be
> likely to entertain because of the evidence or because
> of the lack or insufficiency of the evidence that has
> been received. If again for a doubt to be reasonable
> should be one which a reasonable person acting in a
> matter of this importance would be likely to entertain
> because of the evidence or because of the lack or
> insufficiency of evidence in this case.

(Dft. App. Br. at 10-11, quoting Tr. at 356-59).

During the charge conference, petitioner's counsel had requested that the Trial Court "'mention[]'" the stipulation

5

concerning the December 27 911 tape and Sprint, and the Trial Court responded that it would let the jury know the stipulation was part of the evidence (Dft. App. Br. at 9). The Trial Court subsequently instructed the jury:

> Now, part of the evidence in this case is a stipulation that was entered into about a lost tape and a lost Sprint report which a Sprint report is simply a written copy of whatever is on the tape. That has disappeared. We don't know what is on that tape. But, did the witness who testif[ied] give a description, what was that description. How was that description consistent over a period of time until the person was arrested. How did that description correspond to this defendant, to the perpetrator, et cetera.

(Dft. App. Br. at 9, quoting Tr. at 360-61). The Trial Court later remarked "'we only need one witness to make an identification'" that 'convinces us beyond a reasonable doubt as to the identity of the person who committed the behavior'" (Dft. App. Br. at 9, quoting Tr. at 361-62).

After the Trial Court completed its charge to the jury, petitioner's counsel requested only that it instruct the jury that petitioner had no obligation to testify and that it give a one-witness identification charge. The Trial Court then delivered a supplemental instruction that the burden of proof was on the prosecution and that defendant had no obligation to testify. Petitioner made no other objections to the Court's charge (Respondent's Appellate Brief, annexed as Exhibit 2 to Pollock Aff., ("Resp. App. Br.") at 12, citing Tr. at 371-72).

6

The jury returned a verdict finding petitioner guilty of burglary in the second degree.

C. Petitioner's Direct Appeal

Petitioner, assisted by counsel, appealed his conviction to the Appellate Division of the Supreme Court, First Department. Petitioner asserted two claims: (1) the Trial Court's reasonable doubt charge, which repeatedly used the term "reasonable certainty" to describe the prosecution's burden of proof and which contained other confusing and inaccurate explanations of proof beyond a reasonable doubt, lowered the prosecution's burden of proof below that required by the United States and New York State constitutions; and (2) petitioner's enhanced sentence of sixteen years to life, which was based on factual findings by the Trial Judge, violated petitioner's constitutional right to a jury trial (Dft. App. Br. at i-ii).

The Appellate Division unanimously affirmed petitioner's conviction. People v. Bent, 295 A.D.2d 204, 743 N.Y.S.2d 711 (1st Dep't 2002). In its opinion, the Court found petitioner's "challenge to the court's reasonable doubt charge [was] unpreserved" and declined to review it "in the interest of justice." 295 A.D.2d at 204, 743 N.Y.S.2d at 711. The Appellate Division noted that "[w]ere we to review this claim, we would find that . . . the charge as a whole conveyed the proper

standards." 295 A.D.2d at 204, 743 N.Y.S.2d at 711, citing People v. Cubino, 88 N.Y.2d 998, 1000, 671 N.E.2d 1265, 1266, 648 N.Y.S.2d 868, 869 (1996). The Appellate Division then found petitioner's sentencing claim to be unpreserved and without merit. 295 A.D.2d at 204, 743 N.Y.S.2d at 711.

By letter dated July 18, 2002, petitioner's counsel sought leave to appeal to the New York Court of Appeals, asking that court to consider both claims raised before the Appellate Division (Exhibit 3 to Pollock Aff.). On November 7, 2002, the New York Court of Appeals denied petitioner's application for leave to appeal. People v. Bent, 99 N.Y.2d 533, 782 N.E.2d 571, 752 N.Y.S.2d 593 (2002).

III. Analysis

Petitioner asserts only one claim -- that the Trial Court's jury charge improperly diluted the standard of beyond a reasonable doubt, depriving him of his constitutional right to a fair trial and due process of law (Petition at III, XII).[2]

---

[2] Respondent interprets the Petition to assert three separate claims: (1) the Trial Court's reasonable doubt charge diluted the prosecution's burden of proof; (2) the Trial Court erred by failing to give an adverse inference charge regarding the destroyed 911 tape and (3) the Trial Court showed bias against petitioner when it used the pronouns "we" and "us" during the jury charge concerning the 911 tape (Resp. Mem. at 3). However, my reading of the Petition does not support respondent's interpretation. The assertions petitioner makes regarding the Trial Court's refusal to give an adverse inference charge and its
(continued...)

Respondent argues that because the Appellate Division expressly found petitioner's claim concerning the Trial Court's reasonable doubt instructions unpreserved under New York State procedural rules, federal habeas review of petitioner's claim is procedurally barred (Resp. Mem. at 6). I agree.

A habeas petitioner's constitutional claim can be procedurally barred when it is not asserted in state court proceedings in accordance with state procedural requirements and the state courts rely on that violation of state procedural requirements to reject the claim. As the Court of Appeals for the Second Circuit has explained:

> The independent and adequate state ground doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. Under that doctrine the Supreme Court "will not review

---

[2](...continued)
use of pronouns are offered in support of petitioner's overarching claim concerning the Trial Court's reasonable doubt charge, and not as separate grounds on which petitioner requests habeas relief (see Petition at III asserting as the only ground for relief the "Trial Court's erroneous charge of reasonable doubt").

In any case, any other habeas claims petitioner could potentially present concerning the Trial Court's jury charge are procedurally barred since petitioner's direct appeal only presented arguments of federal rights violations with respect to the charge on reasonable doubt. See e.g. Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001)(When a petitioner fails to exhaust his federal claims in state court and no longer has a state court remedy available for those claims, "federal habeas courts also must deem the claims procedurally defaulted."); Daye v. Attorney Gen., 696 F.2d 186, 195 (2d Cir. 1982)(en banc) (setting forth the methods by which a federal claim can be fairly presented to a state court).

> a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Moreover, "[t]his rule applies whether the state law ground is substantive or procedural." Id.
>
> . . . .
>
> The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus . . . . [I]nvoking principles of comity and federalism . . . federal habeas courts faced with an independent and adequate state ground of decision defer in the same manner as does the Supreme Court on direct review.
>
> . . . .
>
> An exception obtains only if the petitioner demonstrates both good cause for and actual prejudice resulting from his noncompliance with the state's procedural rule. See Engle v. Isaac, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); see also Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) ("Absent a showing of cause and prejudice, it is settled law that an independent and adequate state law ground for a state court conviction cannot be disturbed on habeas."), citing Coleman v. Thompson, 501 U.S. at 722, 729-31 (1991); Morales v. Artuz, 98 Civ. 6558 (JGK), 2000 WL 1693563 at *5-*6 (S.D.N.Y. Nov. 13, 2000), aff'd, 281 F.3d 55 (2d Cir. 2002); Norwood v. Hanslmaier, 93 CV 3748 (NG), 1997 WL 67669 at *2 (E.D.N.Y. Feb. 11, 1997).

10

Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

> In Harris[ v. Reed], 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks omitted). We apply the Long/Harris presumption to the last "reasoned state judgment" . . . . See Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000); see also Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) ("We have repeatedly stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion.").

As long as the state court relies on a procedural bar as an independent basis for its decision, a claim will be procedurally barred on federal habeas review even where a state court addresses the merits of the claim in the alternative. As the Court of Appeals has noted:

> This court has held that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in

11

> the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); Harris, 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding."); Wedra v. Lefevre, 988 F.2d 334, 338-39 (2d Cir. 1993).

Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996); see also Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 (2d Cir. 2000); Garcia v. Lewis, supra, 188 F.3d at 77, 81-82; Feliz v. Conway, 378 F. Supp.2d 425, 433 (S.D.N.Y. 2005); Rivera v. Moscicki, 03 Civ. 5810 (SAS), 2005 WL 2347840 at *2 (S.D.N.Y. Sept. 22, 2005), citing, inter alia, Coleman v. Thompson, supra, 501 U.S. at 735; Johnson v. Dufrain, 99 Civ. 12019 (DC), 2001 WL 406261 at *5 (S.D.N.Y. Apr. 20, 2001); Torres v. Irvin, 33 F. Supp.2d 257, 264 (S.D.N.Y. 1998).

In this case, the Appellate Division rejected petitioner's claim as "unpreserved" and "decline[d] to review it in the interest of justice." People v. Bent, supra, 295 A.D.2d at 204, 743 N.Y.S.2d at 711. This language, which lacks any reference to federal law, demonstrates that the Appellate Division relied on state procedural law as an independent basis for its decision. Although the Appellate Division did not identify the specific statutory basis for its decision, the record suggests that it found petitioner's claim to be procedurally barred because petitioner's counsel failed to make

contemporaneous objections during trial as required by New York Criminal Procedure Law Section 470.05(2).[3]

Petitioner's brief to the Appellate Division quoted several pages of the Trial Court's reasonable doubt instruction from the trial transcript (Dft. App. Br. at 9-22), as well as the Trial Court's charge concerning the 911 tape and Sprint that the parties stipulated had been destroyed (Dft. App. Br. at 9, 21 & n.2). However, that brief does not indicate, or even suggest, that trial counsel made any objections or registered any exceptions to the Trial Court's reasonable doubt charge. Based on petitioner's and respondent's briefs to the Appellate Division, trial counsel's only issues concerning the jury charge

---

[3]New York Criminal Procedure Law Section 470.05(2) provides:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

13

were his request at the charge conference that the court "'mention[]'" the stipulation regarding the 911 tape and Sprint, (Dft. App. Br. at 9 n.2, quoting page 298 of the trial transcript), and his subsequent requests that the Trial Court deliver supplemental instructions regarding petitioner's right not to testify and a single-witness identification (Resp. App. Br. at 12).

In response to petitioner's claim based on the Trial Court's jury instructions, respondent's appellate brief argued, inter alia, that the Appellate Division should affirm the conviction because petitioner's counsel had failed to object to the reasonable doubt charge on federal constitutional grounds, and that petitioner had, therefore, failed to preserve that claim for appeal. Furthermore, respondent argued that, given the overwhelming evidence of petitioner's guilt, the Appellate Division should not review petitioner's unpreserved claims in the interest of justice (Resp. App. Br. at 12-13). Respondent did not assert any other procedural deficiency that would have resulted in the claim being unpreserved.

Petitioner's appellate counsel did not submit a reply brief to the Appellate Division.

Despite the absence of the transcript of petitioner's trial, the absence of any argument by counsel on appeal that the claim was preserved implies that no appropriate objection was

14

made and that counsel's failure to register an appropriate contemporaneous objection was the basis for the Appellate Division's decision.

New York's contemporaneous objection rule has repeatedly been upheld as an adequate and independent state procedural bar sufficient to preclude federal review. See Garcia v. Lewis, supra, 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules." (citation omitted)); Young v. McGinnis, 411 F. Supp.2d 278, 298 (E.D.N.Y. 2006) ("New York's contemporaneous objection rule, which requires that a party make his position with respect to a ruling or instruction known to the trial court, is an adequate and independent state ground for decision."), citing, inter alia, Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

Moreover, courts of this circuit have specifically held that application of New York's contemporaneous objection rule to claims involving jury instructions is an independent and adequate state law ground that precludes federal habeas review. See Reyes v. Keane, 118 F.3d 136, 138 (2d Cir. 1997) ("A state prisoner who fails to object to a jury instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review."); accord Jones v. West, 473 F. Supp.2d 390, 422 (W.D.N.Y. 2007); Smith v. Artus, 03 Civ. 6982 (JSR)(GWG), 2004 WL

15

789769 at *15 (S.D.N.Y. Apr. 14, 2004); Cummings v. Artuz, 237 F. Supp.2d 475, 485 (S.D.N.Y. 2002).

Since the presentation of the record in petitioner's direct appeal establishes that petitioner never objected at trial to the court's instruction on reasonable doubt, the Appellate Division's finding that petitioner's claim was not preserved for appellate review was an independent and adequate state law ground that precludes federal habeas review.

Petitioner could theoretically overcome the procedural bar by demonstrating either (1) cause for and prejudice from petitioner's failure to assert his claims in accordance with state procedural law or (2) that a failure to consider the claims would result in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298, 324-27 (1995); Coleman v. Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, 489 U.S. 255, 262 (1989); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005). Petitioner has not, however, even attempted to meet either standard.

First, petitioner does not even address his trial counsel's failure to object to the Trial Court's jury charge, let alone attempt to establish cause or prejudice as a result of counsel's not objecting.

Second, finding petitioner's claim to be barred will not result in a fundamental miscarriage of justice. A fundamental miscarriage of justice can be established when a

habeas petitioner shows "that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citations omitted). This "actual innocence" exception "means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). A claim of actual innocence requires that petitioner present evidence of sufficient probative force to establish that it is more likely than not that no reasonable juror would have convicted petitioner. Schlup v. Delo, supra, 513 U.S. at 327.

Here, petitioner has not provided any evidence of his innocence, nor has he alleged the existence of any such evidence that was not presented at his trial. Thus, petitioner has not shown that failure to address his procedurally barred claim will result in a fundamental miscarriage of justice and has not overcome the procedural bar as to his claim.

Because petitioner has not overcome the procedural bar, his contention that the Trial Court's reasonable doubt charge violated his due process rights should be denied as procedurally barred.

IV. Conclusion

For the foregoing reasons, I respectfully recommend that the petition be denied in its entirety.

In addition, since petitioner has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253. To warrant the issuance of certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005)(per curiam) (internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005)(per curiam). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that the petition should have been reviewed in a different manner or that petitioner should be encouraged to proceed further.

V. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. See also Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, United States District

TIONS AND WILL PRECLUDE APPELLATE REVIEW. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
May 20, 2008

Respectfully submitted,

HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Mr. Christopher Bent
#99-A-1555
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

Brian J. Pollock, Esq.
Assistant District Attorney
Bronx County
198 East 161st Street
Bronx, New York 10451